UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x

EDGAR PINEDA ZARATE,

              Movant,

      -against-

UNITED STATES OF AMERICA

          Respondent.
--------------------------------x

REPORT & RECOMMENDATION

11 Cv. 6470 (JSR)(MHD)

06 Cr. 516 (JSR)

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:


Pro se prisoner Edgar Pineda Zarate has filed a motion under 28 U.S.C. § 2255 challenging the 108-month period of incarceration to which the District Court sentenced him after he pleaded guilty to two separate counts for his involvement in a conspiracy to import heroin into the United States. He premises his motion on a claim of ineffective assistance of counsel, arguing, in essence, that his trial counsel's purported failure to sufficiently emphasize certain mitigating factors led to the imposition of an unfair prison sentence and deprived him of his right to constitutionally adequate representation. For the reasons that follow, we recommend that the motion be denied.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

We base our factual summary on the parties' motion papers. Zarate is a Colombian national who, in about 2004, began acting as a broker in heroin sales, coordinating drug transfers between sellers, couriers, and buyers. (Gov't Mem. of Law in Opp'n to Pet. 1-2). While Zarate more frequently transacted in cocaine deals local to Colombia, he was intermittently involved between 2004 and 2007 in several deals to import heroin from Colombia or Ecuador into the United States. (Id. at p. 1; see id. at Ex. G p. 12).

On February 7, 2007, a grand jury returned an indictment charging Zarate with one count of participating in a conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846, and with one count of participating in a conspiracy to import into the United States one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 952, 960(a)(1), 960(b)(1)(A), and 963. (Gov't Mem. of Law in Opp'n to Pet. 2). In January 2007, Zarate was arrested in Colombia, where he was held for one year in Combita prison, before being

2

extradited to the United States in January 2008. (Id. at p. 2; Pl.'s Mem. in Supp. of Mot. 26-27).

On August 14, 2008, four days before the scheduled start of his trial, Zarate, acting without the benefit of a plea agreement, pleaded guilty to both counts of the indictment. (Gov't Mem. of Law in Opp'n to Pet 1). The Probation Office subsequently prepared a presentence report estimating that, pursuant to the federal Sentencing Guidelines, Zarate should receive a sentence in the range of 151 to 188 months imprisonment. (Id. at p. 7). Zarate objected to this calculation, arguing that (1) his base offense level should be calculated based on his responsibility for importation into the United States of an amount of heroin between one to three kilograms, rather than three to ten kilograms, and (2) the Probation Office had improperly failed to credit him with two points for acceptance of responsibility, an argument that also implicitly suggested Zarate's eligibility for safety-valve treatment. (See id. at Ex. D). As a result of these objections,

3

the court held a <u>Fatico</u> hearing[1] on January 14 and January 21, 2009.[2] (<u>Id.</u> at pp. 6-9).

During the <u>Fatico</u> hearing, the court heard testimony from two Government witnesses -- a cooperating witness who had done business with Zarate as a drug courier, and an agent from the Drug Enforcement Agency who had been present at the proffer session when Zarate admitted his involvement in the conspiracy. (<u>Id.</u> at p. 9). The court also reviewed the transcripts of several taped phone conversations involving Zarate, as well as an unsolicited letter that Zarate had submitted directly to the court. (<u>Id.</u> at Ex. F pp. 74-75, 86). Lastly, the court conducted its own direct questioning of Zarate concerning the scope of his involvement in the conspiracy and, more generally, in the drug trade. (<u>Id.</u> at Ex. F pp. 89-95, Ex. G pp. 3-12). Based on this evidence, the court concluded that, over the course of the conspiracy, Zarate had been responsible for the importation of between three and ten kilograms of heroin. (<u>Id.</u> at Ex. F pp. 81-

---

[1] A <u>Fatico</u> hearing is "an evidentiary sentencing hearing." <u>United States v. Fatico</u>, 603 F.2d 1053, 1055 (2d Cir. 1979).

[2] The hearing, which began on the morning of January 14, 2009, was adjourned to that afternoon. However, because Zarate apparently became ill, the hearing was adjourned again to January 21, 2009. (<u>See</u> Gov't Mem. of Law in Opp'n to Pet. Ex. G 1).

82). Thus, taking into account the fact that Zarate had no prior criminal record, his base offense level under the Sentencing Guidelines was set as 34. (Id. at Ex. G p. 13). Based on its direct questioning of Zarate, the court concluded, "I do not detect any effort to intentionally mislead the Court or to intentionally make material misstatements. And, therefore, I will give him eligibility for safety valve and two points for acceptance of responsibility."[3] (Id. at Ex. G p. 13). Accordingly, Zarate's total offense level was calculated to be 30, with a guideline range of 97 to 121 months imprisonment. (Id. at Ex. G p. 14).

The court next heard from the parties concerning factors relevant to sentencing under 18 U.S.C. § 3553(a).[4] Defense

---

[3] Both parties agreed that Zarate was eligible for at most only two points for acceptance of responsibility, rather than the three that would have otherwise been available had he not waited until close to the time of trial to make his guilty plea. (See Gov't Mem. of Law in Opp'n to Pet. Ex. F pp. 82-83).

[4] 18 U.S.C. § 3553(a) provides, in part: "The court, in determining the particular sentence to be imposed, shall consider--
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;

counsel noted that Zarate had lost his father at an early age and that he had been forced to flee his family farm following a rebel occupation of his home region in Colombia. (Id. at Ex. G pp. 14-15). Defense counsel characterized Zarate as a "country kid" who, in the midst of a culture where drug trafficking was common, had apparently failed to appreciate the wider implications of his illegal conduct (id. at Ex. G. p. 15), but had acted primarily out of a desire simply to provide for his family. (Id. at Ex. G. pp. 15-16, 18). Defense counsel also noted the "devastating" impact of Zarate's incarceration on his family, which, following his arrest, had been left in Colombia without support. (Id. at Ex. G. p. 16). Defense counsel emphasized the particular strain that Zarate faced as an inmate in a foreign country, where he knows no one, is unable to be

---

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for --
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
(5) any pertinent policy statement [by the Sentencing Commission that is in effect at the time of sentencing]…
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense."

6

visited by family, and does not speak the native language. (Id. at 17). In addition, defense counsel noted that, prior to his extradition, Zarate had been held for one year in Combita prison, "which is a very notorious prison, not only [for] violence, but the lack of sanitary conditions." (Id. at 17). Finally, defense counsel argued that two other members of the conspiracy, who he argued had been "as culpable as [Zarate] is, or more so," had received prison sentences of 57 months and 72 months respectively. (Id. at Ex. G. p. 18). Defense counsel argued that Zarate should, accordingly, be sentenced to a term no greater than those of his co-conspirators. (Id.). The government objected to defense counsel's characterization of Zarate as the smallest actor in the conspiracy (id. at Ex. G. p. 19) and questioned the genuineness of his alleged remorse, noting a potential risk of recidivism. (Id. at Ex. G. p. 21). The court heard last from Zarate himself, who expressed remorse and appealed to the court for forgiveness. (Id. at Ex. G. p. 22).

In making its final determination as to sentence, the court emphasized that "this defendant was involved for a number of years, not just in local sales of cocaine, but in periodic involvement in the transportation of heroin destined for the

7

United States" and that "the defendant's misconduct here was substantial" and "visited material harm on the United States." (Id. at Ex. G. pp. 23, 24). The court explained that "because I am more sympathetic to the defendant than the prosecutor would argue I should be" the court had "given [Zarate] the benefit of considerable reduction in the guideline range." (Id. at Ex. G. pp. 23-24). The court noted that "[h]ad he not served that one year in the, what defense counsel I think quite fairly describes is the notorious Colombian prison, I… probably would have concluded that a sentence at the higher end of the recast range would be appropriate," but determined that "a sentence more or less in the middle is appropriate." (Id. at Ex. G. p. 24). Accordingly, on January 21, 2009, the court sentenced Zarate to 108 months in prison to be followed by five years of supervised release, plus a special assessment of $200. (Id.).

Zarate appealed his sentence to the Second Circuit arguing "that the below-Guidelines term of imprisonment received by his co-defendant, Sanchez, caused his sentence to be marred by unwarranted sentencing disparity." United States v. Sanchez, 370 F. App'x 151, 153 (2d Cir. 2010); see Appellant's Brief, 2009 WL 6771600, at *14-*16 (2d Cir. Sept. 18, 2009). On March 19, 2010, the Circuit affirmed his conviction. Sanchez, 370 F. App'x at

153. The Supreme Court denied his petition for a writ of certiorari on October 4, 2010. Zarate v. United States, 131 S. Ct. 191 (2010). Zarate is currently serving his sentence at Moshannon Valley Correctional Center in Phillipsburg, Pennsylvania.

On September 13, 2011, Zarate filed a motion in this court to have his sentence corrected pursuant to 28 U.S.C. § 2255. Thus, he argues at one point that his sentence should be reduced to no more than 97 months imprisonment (see Mem. in Supp. of Mot. 15), and in other places that it should be reduced to no more than 78 months. (See id. at 20). He premises his motion on a claim of ineffective assistance of counsel. (See generally Pl.'s Mem. in Supp. of Mot.).

## ANALYSIS

### The Motion

Zarate argues that "counsel was ineffective during sentencing proceedings[] in that he failed to insure that the petitioner receive a sentence at below or at the bottom range of the sentencing guideline." (Id. at 11). He premises his

9

ineffective-assistance claim on four arguments. First, he asserts that counsel failed to argue that his sentence should be reduced based on his purportedly minimal role in the conspiracy, asserting that he was "plainly among the least culpable of those involved" in the conspiracy. (Id. at 16, 19). In particular, Zarate points to the 72-month sentence of his co-defendant Ismael Sanchez as evidence of an "unjustifiable disparity" between the allegedly "similarly situated" co-conspirators. (Id. at 16-17). Second, he argues that defense counsel failed to adequately emphasize the negative collateral impacts of his status as a nonresident alien. (Id. at 21-22). Third, Zarate argues that counsel failed to adequately apprise the court of the harsh conditions of his pretrial confinement in Colombia, referring to the one year he was detained in Combita prison prior to his extradition to the United States. (Id. at 26). Finally, he argues that counsel failed to adequately highlight some of the more sympathetic aspects of his background, such as the death of his father and uncle at the hands of guerilla fighters, his financial struggles as a farmer, and his confusion over the judicial process. (See id. at 11-12, 14).

There is no dispute that Zarate's § 2255 motion was timely filed and is not procedurally barred. (See Gov't Mem. of Law in

10

Opp'n to Pet. 15). Instead, respondent challenges the merits of the motion, arguing that Zarate's trial counsel did not fall short of constitutional standards and that, even if he had, Zarate was not prejudiced as a result. (Id. at pp. 16-17).

## Standard of Review

A defendant who has been sentenced by a federal court may file a motion attacking his sentence on the grounds, inter alia, that the sentence was in violation of the Constitution or federal law, that it was in excess of the maximum sentence authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C.A. § 2255(a). Such a motion must be filed within one year of the date that the judgment of conviction becomes final; the date on which an impediment to filing such a motion, which arose from illegal or unconstitutional government action, ceases to be an impediment; the date on which the Supreme Court first recognized a new, retroactive right that is subject to collateral review; or the date on which facts supporting the movant's claim could have been discovered through due diligence, whichever is latest. 28 U.S.C.A. § 2255(f).

A defendant ordinarily cannot invoke § 2255 collateral review of a claim that he could have raised on direct appeal, in the absence of a showing of "(1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012). However, claims of ineffective assistance of counsel are an exception to this general rule and may be raised for the first time in a § 2255 motion. Id. (citing Massaro v. United States, 538 U.S. 500, 504 (2003)).

"In order to prevail on an ineffective assistance of counsel claim, [a movant] must demonstrate both that his counsel's performance was unreasonably deficient under prevailing professional standards and that, but for his counsel's unprofessional errors, there exists a reasonable probability that the result below would have been different." Nosov v. United States, 2013 WL 1955786, *1 (2d Cir. May 14, 2013) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)). In making this assessment, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

12

conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. A defendant "may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate." United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986).

As to prejudice, the focus is "on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhard v. Fretwell, 506 U.S. 364, 372 (1993). The defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669.

**Assessment of the Motion**

1. **Disparate Sentencing of Co-Conspirators**

Zarate places special emphasis on the fact that he was sentenced to a longer term than the 72-month prison sentence of his co-defendant Ismael Sanchez. Thus, he asserts that

> Both [defendants] accepted responsibility and
> satisfied the safety-valve requirements. Both were

13

> involved as brokers in the narcotics conspiracy[.]
> Both were responsible for between three and ten
> kilograms of heroin. Both grew up in difficult
> circumstances in Colombia. Both entered into stable
> adult relationships, living with and supporting their
> children and the mothers of their children. And both
> entered the conspiracy to be able to put food on the
> table for their families.

(Id. at 16-17). Based on these alleged similarities, Zarate complains that the court "fail[ed] to explain what appears to be a large, unjustifiable disparity" in sentencing. (Id. at 17).

Zarate raised this same argument on his direct appeal, and the Second Circuit explicitly rejected it. See Sanchez, 370 Fed. App'x at 153. As the court noted, "[T]he district court gave reasons for its more lenient sentence of Sanchez. In light of those reasons, the two defendants were not similarly situated. The court was not obligated under the principle of procedural reasonableness to give any more extensive explanation than it gave." Id. Although Zarate characterizes his current claim as one for ineffective assistance of counsel, on this point he is arguing, in substance, that the attorney should have contrived to persuade the trial judge to impose a lesser sentence to avoid the claimed unfair disparity. An attorney, however, does not serve as a guarantor that the court will grant the sentence that a defendant hopes for, and in this case the attorney made the

14

argument that Zarate's guilt should be equated with that of his co-defendants. The fact that the trial court -- and later the Circuit Court -- thought otherwise does not amount to ineffective assistance of counsel.

In any event, the argument that Zarate's sentence is unreasonable because other conspirators, such as Sanchez, received shorter sentences is meritless, because, as the Second Circuit has explained "section 3553(a)(6) only prohibits 'unwarranted sentence disparities among defendants... who have been found guilty of similar conduct.'" United States v. Bedoya-Cano, 186 F. App'x 56, 58 (2d Cir. 2006). Here, there are several important differences between Sanchez's and Zarate's cases which make clear that the disparity in their sentences was warranted, as the Circuit Court found. First, Sanchez was charged with only one count under the indictment, whereas Zarate was charged with two counts. (See Gov't Mem. of Law in Opp'n to Pet. 2, 4). Second, Sanchez entered into a plea agreement, while Zarate's guilty plea was entered without the benefit of any such agreement. (See id. at p. 4). Third, because Sanchez pleaded guilty several weeks before trial, he qualified for a three-point reduction for his acceptance of responsibility, while Zarate's eleventh-hour guilty plea, entered after the Government

15

had invested considerable resources to prepare for trial, qualified him for a reduction of only two points under the Sentencing Guidelines. (See id. at p. 4, Ex. F pp. 82-83). Lastly, in sentencing Zarate, the court expressed reservations about his sincerity in accepting responsibility for his guilt. In particular, the court noted with some disapproval a letter that Zarate had submitted unsolicited to the court, in which he seemed to be distancing himself from full acceptance of guilt. (See id. at Ex. F p. 75). This skepticism was echoed by the Government, which opposed granting Zarate safety-valve treatment or awarding him the two-point credit for acceptance of responsibility in light of its belief that Zarate had not fully assumed responsibility for his involvement in the conspiracy. (See id. at Ex. F p. 85, Ex. G p. 17). In contrast, neither the court nor the Government expressed any reservations about the sincerity of Sanchez's contrition. (See generally id. at Ex. B). In short, as the Second Circuit held, the "two defendants were not similarly situated," Sanchez, 370 Fed. App'x at 153, and thus Zarate has no reason to expect that his prison sentence should have been comparable in length to that of his co-defendant.

16

## 2. <u>Minimal/Minor Role Adjustment</u>

Zarate also asserts for the first time that counsel's failure to argue for a minimal- or minor-role adjustment amounted to ineffective assistance. In making this argument, Zarate asserts that "there is little question that [he], who hereto-for had never been convicted of a crime, was the instrument (the vessel) used by others in this case". (Pl.'s Mem. in Supp. of Mot. at 18). He further argues that he was "not important to the venture's success" and "the courier and the co-defendants had planned to transport the drugs themselves, and would have done so if petitioner had not acted as a broker." (<u>Id.</u> at 19). He thus concludes that had counsel argued for a minor-role adjustment, his "base offense level would have been 28, at Criminal History category I, with an advisory guidelines range of 78 to 97 months" which "Section 3553(a) factors… could then have served to decrease… further." (<u>Id.</u> at 20).

According to the Sentencing Guidelines, a "minimal participant" in an offense is entitled to a four-point reduction from the base offense level, while a "minor participant" is entitled to a two-point reduction. U.S.S.G. § 3B1.2. The commentary to the Guidelines explains that the term "minimal

17

participant" refers to "defendants who are plainly among the least culpable of those involved in the conduct of a group" and "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt. 4; cf. Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). The term "minor participant" refers to a defendant who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. 5. As Zarate acknowledges (Pl.'s Mem. in Supp. of Mot. 16), it is the criminal defendant's burden to prove by a preponderance of the evidence that he qualifies for a minimal- or minor-role adjustment to his base offense level. United States v. Lopez, 937 F.2d 716, 726 (2d Cir. 1991).

The Second Circuit has repeatedly held that "a reduction pursuant to U.S.S.G. § 3B1.2 will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's

18

conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime." United States v. Carpenter, 252 F.3d 230, 235 (2d Cir. 2001) (quoting United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999) (per curiam)) (brackets omitted). In particular, the Second Circuit has "routinely upheld the denial of mitigating role adjustments for brokers," such as Zarate, "dealing in even relatively small quantities of drugs." United States v. Nunez-Gonzalez, 380 F. App'x 87, 90 (2d Cir. 2010) (citing United States v. Imtiaz, 81 F.3d 262, 265 (2d Cir. 1996); United States v. Adames, 901 F.2d 11, 12 (2d Cir. 1990)).

Zarate's attorney in fact did argue that Zarate had played a limited role and had ranked lower in the conspiracy than several of his co-conspirators (see Gov't Mem. of Law in Opp'n to Pet. Ex. G p. 18), and it is clear that the court specifically considered the extent of Zarate's involvement in the conspiracy, as compared to that of his co-conspirators. (See id. at Ex. G pp. 17-18, 19-20). Having done so, the court explicitly rejected the assertion that Zarate was "just your simple farmer beset with economic hardship… [t]he Colombian equivalent of the kid from Peoria," and concluded that Zarate

19

had repeatedly and "knowingly and intentionally" participated in deals to transmit heroin to the United States. (Id. at p. 23).

The court's implicit determination that Zarate's role in the conspiracy had been more than insignificant seems amply supported by the evidence. For example, the cooperating witness who testified at the Fatico hearing described Zarate's involvement in multiple heroin deals in which her husband, and later she, had been involved. (See id. at Ex. F p. 3). The court also observed that "the transcripts [of taped conversations involving Zarate] seem highly consistent with someone who is a drug-trafficker and who is quite familiar with [the other conspirators] and is taking an affirmative position." (Id. at Ex. F p. 86). In addition, Zarate described for the court his involvement in two separate heroin deals. (See id. at Ex. G p. 8). In light of the fact that such evidence reasonably indicates that Zarate was no less culpable than the average participant in a drug trafficking ring and that he had some understanding of the general scope and structure of the drug enterprise of which he was a part, there is clearly no basis for his argument that counsel's failure to argue for a minor-role adjustment amounted to ineffective assistance. See United States v. Darling, 2013 WL 1955854, *2 (2d Cir. May 14, 2013) ("failure to make a meritless

argument does not amount to ineffective assistance") (citing United States v. Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008)). In other words, Zarate suffered no prejudice as a result of counsel's omission of the fruitless argument that defendant now cites, particularly in light of the fact that his attorney did attempt to argue that his role in the conspiracy had been limited.

### 3. Collateral Effects of Alienage

Zarate also argues that his attorney was ineffective in failing to highlight the collateral effects of Zarate's alien status as a reason for the court to impose a shorter sentence. Specifically, he argues that as a criminal alien, he is made "subject to harsher confinement within the federal Bureau of Prisons" and "is eligible for no less than low-security custody and is to be housed at a contract facility, as opposed to a BOP-operated penal institution."[5] (Pl.'s Mem. in Supp. of Mot. 21).

---

[5] In making this argument, Zarate states that the issue was mentioned by counsel prior to sentencing, but he complains that "the court considered none of these factor[s]" and he argues that this is somehow attributable to "counsel's deficient performance." (Pl.'s Mem. in Supp. of Mot. 22). Because we have been unable to identify where in the record defense counsel raised the issue of the collateral effects of alienage, we

The Second Circuit has made clear that "the collateral effects of deportability… generally do not justify a departure from the Guidelines range" unless the consequences are "extraordinary in nature or degree." United States v. Duque, 2007 WL 4315755, at *1 (2d Cir. Dec. 10, 1997). In particular, the Circuit has expressly rejected downward departures premised on "the unavailability of preferred conditions of confinement," or "the possibility of an additional period of detention pending deportation following the completion of sentence," United States v. Restrepo, 999 F.2d 640, 644 (2d Cir. 1993) -- that is, the same collateral effects that Zarate argues could have served as a basis for him receiving a lower sentence.

Zarate "here does not allege that he is facing extraordinary collateral consequences that are not imposed on other incarcerated deportable aliens. Instead, the conditions of which he complains apply generally to deportable aliens in custody. Such 'run of the mill' consequences provide no basis for a downward departure and his counsel was therefore not ineffective for failing to argue for a below-Guidelines sentence

---

assume for purposes of assessing the motion that defense counsel failed to make the argument.

on that basis." <u>Sierra v. United States</u>, 2012 WL 1656933, at *5

(S.D.N.Y. May 9, 2012) (citing <u>Duque</u>, 2007 WL 4315755, at *1).


We further note that the collateral effects of alienage was

an issue that was discussed during Ismael Sanchez's sentencing

hearing. In the context of that discussion, the court expressly

rejected collateral effects of alienage as a basis for downward

departure, but indicated that, despite the Government's

protestations, it would consider such collateral effects when

fashioning a sentence under § 3553. (Gov't Mem. of Law in Opp'n

to Pet. Ex. B pp. 9-12). The court nonetheless noted that the

issue would not be "material" to Sanchez's final sentence. (<u>Id.</u>

at 12). From this we infer that even if the collateral effects

of Zarate's alienage had been emphasized by counsel in the same

manner that it had been during Sanchez's sentencing hearing, it

would not have had a material impact on the outcome of Zarate's

sentence. Thus, counsel's failure to address the issue did not

cause Zarate any prejudice.


4. <u>**Zarate's Other Claims**</u>


As to Zarate's other claims -- that counsel did not

adequately emphasize Zarate's sympathetic background or the

harsh conditions of his pretrial confinement in Colombia -- we observe that his allegations have no basis in fact. A review of the hearing transcripts as well as counsel's written submissions to the court reveals that counsel did specifically and ably argue that the court should consider both issues. (See Gov't Mem. of Law in Opp'n to Pet. Ex. E p. 3, 4, Ex. G 14-18).

Contrary to Zarate's apparent belief, criminal defendants have no constitutional right to have an attorney who can achieve a sentence at or below the bottom of the guideline range. In any event, Zarate's lawyer in fact did obtain a sentence far below the original guideline range of 151 to 188 months imprisonment that was recommended to the court by the Probation Office, as well as below the 120-month statutory minimum sentence noted by the court during Zarate's plea.

The court credited defense counsel's able presentation of Zarate's case by affording Zarate a "considerable reduction in the guideline range." (See id. at Ex. G pp. 23-24). In addition, the court stated that "[h]ad [Zarate] not served that one year in the, what defense counsel I think quite fairly describes is the notorious Colombian prison, I… probably would have concluded that a sentence at the higher end of the recast range would be

24

appropriate." (Id. at 24). Thus, Zarate is not only incorrect in stating that his attorney omitted specific arguments about mitigating circumstances in his history, but also fails to appreciate the beneficial outcome that counsel actually achieved on his behalf. That counsel was able to obtain this reduction in sentencing despite the court's apparent frustration with Zarate's fumbled efforts at contrition is all the more commendable. Such legal representation clearly far exceeds the minimum requirement of adequacy established by the Sixth Amendment.

## CONCLUSION

For the reasons discussed above, we conclude that Zarate's claim of ineffective assistance of counsel is utterly without merit and, accordingly, we recommend that his motion be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room

1340, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).


Dated: New York, New York
       June 10, 2013



_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

26

Copies of this Report & Recommendation are being sent today to:

Mr. Edgar Pineda Zarate
60669-054
Moshannon Valley Correctional Center
555 I Geo Dr.
Phillipsburg, PA 16866

Sarah Y. Lai, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street, Room 623
New York, NY 10007